## FRYER *v.* MUTUAL LIFE INS. CO. OF NEW YORK.

*(Circuit Court, S. D. New York.* April 13, 1887.)

1. PATENTS FOR INVENTIONS — NOVELTY — INVENTIVE GENIUS — FIRE-PROOF FLOORING.

An improvement in fire-proof flooring, the utility of which is sufficiently proven, though it does not involve a high degree of inventive faculty, consti· tutes a patentable novelty.

2. SAME—ANTICIPATION.

Where none of the patents or publications set up as anticipations of a new improvement in fire-proof flooring points out the simple means suggested by the improvement of protecting the girders by the use of a filling strip or soffit tile, dovetailed into and supported by the tiles between the girders, which remedies the radical defect in previous methods, by which the bottom flanges of the girders were not properly protected by fire-proof materials, the improvement is not anticipated by the previous patents.

3. SAME.

Where a patent consists of a certain comb'nation of several parts, ulti mately to be cemented together, the appropriation of the invention is com- plete before the parts are joined.

In Equity. Bill for infringement of letters patent.

*Geo. W. Van Siclen,* for complainant.

*James Knox,* for defendant.

WALLACE, J. The complainant alleges infringement by the defendant of the second claim of letters patent No. 112,926, granted March 21, 1871, to Johnson and Kreischer, for improvement in hollow-tile floors. The invention relates to a fire-proof flooring, which is composed of hollow-arched tiles, resting upon flanged iron girders. The tiles are provided with dovetailed grooves near their bottom edges, to catch over the lower flanges of the girders. The dovetailed grooves project somewhat below the girders, so as to receive filling strips made of clay, so formed at the upper part that they can be inserted in the dovetailed grooves. The object of the filling strips is to fill up the spaces between the adjoining tiles. They protect the lower ends of the iron girders, and with the dovetailed tiles inclose them in a fire-proof material forming a fire-proof ceiling to the room below. Besides protecting the iron girders, they im- prove the finish of the ceiling. The claim is: "(2) The removable clay filling strips, D, in combination with the hollow-arched tiles, A, and double-flanged girders, B, as herein set forth, for the purpose specified."

The substantial defendant is the Wight Fire-Proofing Company, the owner of letters patent No. 285,452, granted September 25, 1883, to that company as assignor, for substantially the same improvement as that specified in the claim of the complainant's patent. Novelty of the claim in controversy is contested by the defendant in reliance upon various prior patents and publications. The most important of these is the United States patent to Petersen, granted April 3, 1855, and the English patent to Hogg, of October 1, 1861. The patent to Petersen does not show or suggest a removable or any filling strip intended to cover

the lower flanges of the girder, and fill up the interstices between the adjoining tiles. It shows a fire-proof floor or ceiling, composed of single-arched tiles, resting on the flanges of double-flanged girders, and coming below the girder. But, like the patents to Bonneville, Abord, and Roux Freres, the interstices between the adjoining tiles are to be filled with mortar, to cover the lower ends of the beams, and protect them from fire in the building. The patent to Hogg has no reference to fire-proof floorings or ceilings. It points out the objections to the use of unprotected iron girders, columns, doors, etc., in fire proof buildings, "which, in place of being a security, often give way on becoming hot or cracked from the application of water." His invention, as described, consists in coating the girders, columns, etc., with fire-proof material, or inclosing them in "moulded forms of fire-proof material applied thereto, suitable appliances being provided for fixing."

The novelty of the present invention consists in substituting a filling strip, which is practically a soffit tile, for the mortar used by Petersen, adapted for a fire-proof floor and ceiling. The patent to Hogg may have suggested the utility of inclosing the iron girder with fire-proof material, but it did not point out the means adapted to the new occasion. One of the radical defects of the fire-proof flooring which had been previously constructed was that the bottom flanges of the girder were not properly protected by fire-proof materials. When exposed to fire, the mortar gave way, and the filling between the girders gave way, the girders became warped and twisted, and the whole flooring or ceiling became insecure and dangerous. Neither of the patents or publications which are set up as anticipations pointed out the simple and practical method of remedying this defect by the use of a filling strip or soffit tile, dovetailed into and supported by the tiles between the girders. The improvement may not have involved a high degree of inventive faculty, but its utility is attested by the fact that the Wight Fire-Proofing Company have adopted it, and it hardly lies with that company, the real defendant here, while justifying its acts under its own patent for the same thing, to insist that there was no patentable novelty in the improvement.

In using the invention covered by the claim in controversy the defendant first placed the filling strips temporarily in position, and then filled the whole joints between it, the girders, and the adjoining tiles with cement. After being thus cemented, the filling strip is no longer removable. This method of cementing the filling strip and the adjoining parts in practice is contemplated by letters patent No. 285,452. It is now insisted for the defendant that it does not use the "removable" clay filling strip of the claim. In one sense this is true. The soffit tile is not removable after it has been made immovable. But the appropriation of the invention was complete when the defendant used the hollow-arched tiles, the double-flanged girders, and the removable clay filling strips, in combination in the ceiling constructed for it by the Wight Fire-Proofing Company. The appropriation of the invention was complete before the parts were cemented together.

A decree is ordered for the complainant.